UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| PHILLIP LITTLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO: 3:11-CV-217 |
| v. | ) |
| | ) |
| ROBERT A. SHRINER, | ) |
| | ) |
| Defendant | ) |

**OPINION AND ORDER**

After refusing to return a pair of handcuffs, Phillip Littler, Plaintiff in this action and an inmate at the Indiana State Prison in Michigan City, IN, repeatedly ignored requests from Defendant Robert A. Shriner ("Shriner"), a correctional lieutenant on duty that day, to "cuff up."[1]  To compel compliance, Shriner subjected Littler to two bursts of liquid pepper spray.  When that failed, Shriner fired five rounds (8 pellets each round) of powder pepper spray from a pepper ball gun into Littler's cell.  Littler, despite clearly suffering the affects of the pepper spray, still refused to comply indicating instead that he "wanted to ride it out."  Next, a fully-geared tactical cell extraction team entered the cell and within two minutes and fifteen seconds had Littler subdued, cuffed, shackled, and walking out of his cell.  A few seconds after they left the cell,  Littler resisted the cell extraction team and was carried the remainder of his way to medical (he refused medical treatment) and then on to the decontamination unit before being housed in the Special Management Unit ("SMU").  The above events were captured on video.

---

[1] "Cuffing up" is a process where the offender, with his back to his cell door, submits to the application of handcuffs to his wrists.

1

Littler filed this excessive force claim asserting that Shriner violated his Eighth Amendment rights when he deployed the pepper spray, called in the cell extraction team, and placed him in the SMU. Before the Court is Defendant's Motion for Summary Judgment [DE 60]. For the following reasons, the Motion will be GRANTED.

## APPLICABLE STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson,* 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## FACTUAL BACKGROUND

As noted in the introductory paragraph, the events of December 3, 2010 are entirely captured on videotape and corroborated by contemporaneous written reports. Littler does not appear to dispute the facts; he objects almost entirely to the amount of force used by Shriner to achieve compliance with his request to "cuff up." However, for purposes of a complete record, the

2

undisputed facts are as follows:

On December 3, 2010, Littler was placed in the I-Detention Unit ("IDU") pending investigation for inappropriate statements to a staff member.[2] Although it is unclear how Littler came into possession of them, it is undisputed that he had a pair of handcuffs in his cell that he refused to return when ordered to do so. An inmate in possession of handcuffs creates a dangerous situation as handcuffs can be utilized as weapons against other inmates and staff. (Shriner Decl. ¶¶7-8).

Defendant Shriner was the lieutenant on duty that day and, became aware that Littler was secreting the handcuffs. Shriner informed Littler that if he did not comply with the order to return the handcuffs, Oleoresin Capsicum[3] ("pepper" or "OC") spray would be deployed. Littler refused to return the handcuffs and told Shriner to "get the goon squad," an apparent reference to the cell extraction team.[4] Shriner informed Littler that the cell extraction team would not be called simply

---

[2] Littler does contest his placement in the IDU, but for present purposes this fact is irrelevant to the legal issues presented.

[3] OC is a non-lethal chemical compound that irritates the eyes, causing temporary pain and visual impairment. It is routinely used when dealing with violent or noncompliant inmates and is carried by correctional officers as part of their standard equipment.

[4] The Court takes judicial notice of Littler's testimony in a second case pending against the Indiana Attorney General, 3:11-CV-218 relating to disciplinary actions taken against him. During the bench trial in that case, Littler provided testimony explaining that his refusal to comply with orders to leave his cell was a routine tactic he employed to force corrections staff to have to enter the cell and forcibly remove him:

> What actually happened was I was escorted to the segregation unit and informed that I was being placed on investigation, and I didn't take that well. I performed a tactic that I typically use when I feel like I'm being mistreated and I forced a cell extraction. In this particular instance, I could not simply refuse to come out of my cell because I was already in the cell they wanted me. They just took me there. Normally, when they want to take me to the hole, I refuse to come out of the cell I'm already assigned. That way they have to forcibly extract me and take me to the hole. Because obviously I don't want to go to the hole, I punish them for taking me to the hole. I make it difficult ...

because Littler wanted to fight them. Littler continued to refuse to relinquish the handcuffs and Shriner deployed a one second burst of liquid form of OC spray aimed at Littler's facial area. Littler was asked again if he would surrender the handcuffs and he refused. Shriner then repeated the use of the liquid OC spray. Littler did not relinquish the handcuffs.

Shriner's next step was to retrieve a pepper ball gun.[5] At this point, Shriner also began recording the events using a videographer. Before using the pepper ball gun, Shriner asked Littler if he was willing to comply. Littler refused. Shriner then fired four indirect shots at the ceiling and four direct shots at Littler's torso.[6] This process was repeated four additional times with several minute intervals in between each round. Before each round, Shriner asked Littler if he was ready to comply. Littler refused each time. At this point, the video shows Littler clearly suffering from the effects of the pepper ball rounds but he continues to be adamant in his refusal to relinquish the handcuffs.

When it became clear that the pepper ball gun was not going to secure Littler's compliance, Shriner summoned the cell extraction team. Due to the inherent danger of direct contact with the inmate, the cell extraction team is the last resort measure utilized to remove a noncompliant inmate.

The videographer remained with Littler while Shriner gathered the team and they suited up

---

> Well, in this particular instance, I didn't agree with their -- with what they did and I forced a cell extraction by taking the cuffs and breaking them and then throwing them at the back of the cell and said 'Get the goon squad.'

Transcript DE 103 in 3:11-CV-218, at 119-120.

[5] A pepper ball gun, as its name implies, contains powder packets of OC. The gun itself is akin to a paint ball gun.

[6] This process of firing four indirect rounds followed by four direct rounds is in accordance with the policy and procedures under which Shriner had been trained.

4

in their tactical. While on video, Littler can be heard talking to other inmates and indicating that he intended to resist the cell extraction team. When Shriner returned, he asked Littler again if he was going to comply. Littler refused. Littler then charged the cell extraction team as they entered his cell. After a very short encounter, Littler was subdued, cuffed, and removed from the cell. The encounter with the cell extraction team, from the moment they entered the cell until the moment Littler exited the cell, lasted two minutes and fifteen seconds. As the cell extraction team walked Littler to medical and to the decontamination room, Littler struggled with them. He was then hog-tied and carried by the cell extraction team to medical where he promptly refused medical attention. He was next taken to the decontamination area where he was permitted to wash off the OC spray. Littler requested and was granted the ability to take a full shower. He was provided clean clothes and placed in a cell in the SMU.

## **DISCUSSION**

Littler alleges that Lieutenant Shriner used excessive force against him in violation of his Constitutional rights under the Eighth Amendment. A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991). "The core requirement for" an excessive use of force "claim is that [the defendant] used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citing *Hudson v. McMillian*, 503 U.S. 1 at 7 (1992)); *see also Whitley v. Albers,* 475 U.S. 312 (1986) (Whether a

5

security measure "inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm"). Several factors guide the inquiry of whether a defendant's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Hendrickson v. Cooper*, 589 F.3d at 890 .

Littler admits that he refused repeated orders to return handcuffs to officers (DE 1 at 3-4). Little further admits that the application of some force was necessary. *See* DE 73 at. 2 ("While (restraint) was entirely warranted and even necessary in the situation..."). There also appears little dispute that had Littler complied with the order to give up the handcuffs and/or "cuff up," there would have been no need to use force. But his refusal to comply justified the use of at least some force because in the prison context, "orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984).

Littler asserts that Lieutenant Shriner should have called for a cell extraction team immediately rather than repeatedly use a chemical agent on him (DE 1 at 4). But the Constitution does not mandate that prison officials use physical force rather than chemical agents where an inmate locked in his cell refuses an order. *See Soto v. Dickey*, 744 F.2d at 271 (use of chemical agent is not a *per se* violation of the Eighth Amendment, "whether an inmate is locked in his cell or not"). Nevertheless, even where use of a chemical agent is justified, its use must be reasonable. "[I]t is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Id.*

6

at 271. Here, this is precisely what Littler contends occurred. He argues that rather than repeatedly spraying him with pepper balls, Shriner should have come in and removed him from his cell immediately.

Unfortunately for Littler, the recorded video clearly demonstrates that no genuine issue of material fact exists as to whether Shriner used excessive force. *See Scott v. Harris*, 550 U.S. 372 (2007) (holding that court had to view the facts as depicted in the videotape which clearly discredited the version of events of the plaintiff alleging excessive force). The video clearly shows a very obstinate Littler refusing to comply with orders despite being in obvious discomfort from the effects of the pepper spray. Shriner's actions were designed to gradually escalate Littler's discomfort in an effort to compel compliance from Littler without the risk to correctional officers that occurs with an entry into the cell. Before each round of pepper spray, Shriner asked Littler if he was ready to comply. Littler refused each time. Moreover, this is not a situation where the use of chemical agents continued to be utilized after an inmate complied with orders. Littler continuously refused to obey orders even after the various chemical agents were employed. Littler is viewed on tape stating clearly that he intended to challenge the cell extraction team – in fact, having the cell extraction team enter his cell to remove him was the very goal of his resistance.

Nevertheless Littler complains that too much pepper spray was used and that Shriner should have removed him from his cell earlier. Unfortunately for Littler, the Supreme Court recognized over twenty years ago in *Whitley v. Albers,,* 475 U.S. 312 (1986) that the Court does not sit in judgment of valid prison security measures even if other measures could have been employed:

> Where a prison security measure is undertaken to resolve a disturbance . . . we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to

> maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm...[S]uch factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted are relevant to that ultimate determination. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.
>
> When the ever-present potential for violent confrontation and conflagration, ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators carries special weight. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly, in ruling on a motion for a directed verdict in a case such as this, courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

*Whitley*, 475 U.S. at 321-322 (1986) (quotation marks, citations, and ellipsis omitted).

In this case, there is no question that Shriner utilized good faith and had a legitimate penal interest in utilizing the pepper spray/pepper ball gun against Littler. Littler had handcuffs, the equivalent of a dangerous weapon, in his cell which created a security risk to other correctional officers and staff as well as other inmates. Moreover, at any time, Littler could have chosen to comply with the request to cuff up and/or relinquish the handcuffs and Shriner would have ceased the use of pepper spray. Instead, Littler wanted to "ride it out." Under these circumstances, there

8

is little credibility to Littler's claim that the force utilized was excessive.

Moreover, as indicated earlier, this is not a situation where Shriner continued to utilize pepper spray after Littler complied or after he was forcibly extracted from his cell so as to lack the indicia of good faith or demonstrate an intent by Shriner to wantonly inflict pain. The actions of Shriner were narrowly tailored to compel Littler's compliance. While Littler did suffer the natural effects from the pepper spray, those effects were temporary, he was offered and refused medical attention, and he was permitted to shower and change his clothes within minutes of being removed from his cell by the cell extraction team. Simply put, there is no evidence that Shriner "inflicted unnecessary and wanton pain and suffering" on Littler.

Littler further alleges that Shriner placed him in a cell without any heat or running water, and that although Shriner allowed Littler to briefly rinse out his eyes, he "refused to allow me a shower and had me placed in a cell with no running water and [a] shower restriction." DE 1 at 5. These facts are clearly belied by the video evidence submitted to the Court. The video clearly depicts Littler requesting a full shower and being granted one.[7] And, while "prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment," *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997), citing *Farmer v. Brennan*, 511 U.S. at 833-834, there is simply no evidence that any of the conditions to which Littler was subjected even come close to a violation of the Eighth Amendment. Accordingly, the Defendant's Motion for Summary Judgment is GRANTED.

## CONCLUSION

Based on the foregoing, the Defendant's Motion for Summary Judgment [DE 60] is

---

[7]The court is also mindful that Littler was offered medical treatment and refused.

9

GRANTED. The Clerk is directed to enter judgment in favor of the Defendant.

Entered: This 9th day of September, 2013.

                                                                                   s/ William C. Lee  
                                                                                   United States District Court